[L. A. No. 4471.   Department Two.—September 27, 1918.]

## JOHN NEWMAN et al., Respondents, v. CITY OF ALHAMBRA (a Municipal Corporation), Appellant.

MUNICIPAL CORPORATIONS — PAVING OF STREET — FLOODING OF PRIVATE PROPERTY—NEGLIGENCE—FINDING—EVIDENCE.—In an action against a municipal corporation for damages to private property by flooding as a result of the paving of the street in front thereof, where there was substantial evidence to support the contention that the raising of the grade forced the flood waters upon the land, the finding will not be disturbed, and the defendant cannot claim the damage was caused by an act of God.

ID.—CHANGE OF DRAINAGE—UNWARRANTED PHYSICAL MEANS—INJURY TO ANOTHER.—The owner of property who by unwarranted physical means provides for a change in the drainage of his land so that another must thereby suffer injury may not attribute the logical consequences of his engineering to an act of God.

ID.—ACT OF GOD.—An act of God excludes the idea of human agency, and if it appears that a given loss has happened in any way through the intervention of man, it cannot be held to have been an act of God, but must be regarded as the act of man.

ID.—ACT OF CONTRACTOR—RAISING OF GRADE—LIABILITY OF CITY.—In such action, where the evidence tended to show that the contractor who raised the grade, acting under instructions of the city engineer, made the crown of the street higher than the ordinance or his agreement required, and it was not only stipulated that the city accepted the street as raised in grade and used it, but, moreover, there was a conflict of testimony regarding the repair and consequent raising of the street, some of the witnesses declaring that the altitude of the grade was due to repairs made by the city's own workmen and not to the acts of the contractor, it cannot be contended that the city is not liable.

ID.—EVIDENCE—CONVERSATIONS REGARDING GRADING OF STREET.—In such action, the defendant suffered no material injury by the admission of testimony regarding alleged conversations between plaintiff and certain officers of the city government regarding the intended action of the municipality in grading the street.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Paul J. McCormick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Alfred Barstow, and Barstow, Beach & Rohe, for Appellant.

Frank A. Jeffers, for Respondents.

MELVIN, J.—Plaintiffs recovered a judgment in the sum of $1,250 against the City of Alhambra because of damage by flood to their property due, as alleged, to the negligence of the municipal corporation in diverting the flow of certain surface water.   While stipulating that the amount of the judgment is not an unjust compensation for the injury to their property suffered by plaintiffs, defendant, denying any liability on its part to compensate the Newmans for such damage, appeals from the judgment and from an order denying its motion for a new trial.

It is argued that the evidence did not justify the verdict; that the verdict is against law; that errors of law were committed in the superior court which should cause a reversal of the judgment on appeal; and that the trial court erred in refusing to grant defendant's motion for a new trial.

In support of the first of these points appellant's counsel elaborately analyze the evidence, and argue that plaintiffs, after buying a low-lying lot, negligently failed to grade it in such manner as to guard against inundation during the rainy season; that the street, the grade of which, plaintiffs declared, was raised to a height and given a trend that backed water upon their property, was in reality paved according to good engineering practice; that the city did not raise the crown of the street; that the water which caused the injury to the land of plaintiffs came from sources other than those to which it was attributed in the complaint; and that the damage was caused by act of God.

All of these contentions, except, perhaps, the last one, are based upon conclusions drawn from conflicting testimony, and, of course, no one of them may prevail if we find any substantial proof in support of the verdict and the judgment.

Respondents bought a lot on the south side of Cedar Street, in Alhambra, in the year 1910.   The property was immediately adjoining and west of a concrete waterway, without a top, used for drainage purposes, and having a cross-section of thirty-five square feet.   Prior to the purchase of the realty by respondents the street had been graded, the curb had been

set, and the sidewalk had been laid. Respondents graded their land to a level higher than the curb and built a house on the property. The concrete drainage ditch which borders the property of plaintiffs also crosses Cedar Street. Appellant maintained the part of this waterway traversing its highway so that the open ditch had a cross-section of only twenty-four feet. It was then covered with planks and the low point of the street being at the ditch, the drainage of Cedar Street, both from the north and the south, was toward and into said waterway. There was testimony tending to show and sufficient to support the conclusions reached by the jury that prior to 1914, at times of heavy rainfall, the water which the ditch could not carry would follow the planks across Cedar Street from the north to the south side of said street and then would be drained by the ditch of greater capacity than that crossing the said highway, thus being made to flow along the border of the property of plaintiffs without any injury to the land or buildings. There was testimony that this was the condition at the time the Newmans bought the land. In 1913 Cedar Street was raised about twenty-two inches at the ditch by the filling in of earth upon the top of the planks covering the ditch and by crowning it with some hard concrete material. It was the contention of respondents, and their theory was supported by substantial evidence, that when the heavy rains of the season of 1914 came, on two occasions the water filled the ditch to the brim and at such times the smaller caliber of the waterway traversing Cedar Street and the raise of twenty-two inches in the paving of said street over the ditch combined to force upon the land of plaintiffs the flood waters which would have otherwise been harmless. In view of the evidence rationally supporting such an asserted set of facts, the argument in appellant's brief on this branch of the case amounts merely to an assertion that the jury decided against that which counsel for appellant regard as the weight of the evidence. While the argument is ably and plausibly maintained, we cannot undertake here to pass upon the weight of conflicting testimony. Nor can the appellant under the facts of this case, as the jury was justified under the evidence in finding them, assert that it is exonerated because the detriment to the property of plaintiffs was caused by "the act of God." The owner of property who by unwarranted physical means provides for a change in the drainage of his land so

that another must thereby suffer injury may not attribute the logical consequences of his engineering to an act of God. In defining an "act of God," as that term is used in the law, this court long ago, in *Polack* v. *Pioche,* 35 Cal. 416–423, [95 Am. Dec. 115], adopted the following language of Lord Mansfield in *Forward* v. *Pittard,* 1 Term R. 27: "Now, what is the act of God? I consider it to mean something in opposition to the act of man; for everything is the act of God that happens by his permission; everything by his knowledge, . . . such acts as could not happen by the intervention of man, as storms, lightnings, and tempests." In the same paragraph the learned Mr. Justice Sanderson, who delivered the opinion of the court, further expounded the law as follows: "The expression excludes the idea of human agency, and if it appears that a given loss has happened in any way through the intervention of man, it cannot be held to have been the act of God, but must be regarded as the act of man." This definition and its application to injuries produced partly by the intervention of man in dealing with the elements has been followed ever since. (*Chidester* v. *Consolidated Ditch Co.,* 59 Cal. 197; *Odd Fellows Mutual Aid Assn.* v. *James,* 63 Cal. 598, [49 Am. Rep. 107]; *Pope* v. *Farmers' Union & Mill. Co.,* 130 Cal. 139, [80 Am. St. Rep. 87, 53 L. R. A. 673, 62 Pac. 384]; *Fay* v. *Pacific Improvement Co.,* 93 Cal. 253, [27 Am. St. Rep. 198, 16 L. R. A. 188, 26 Pac. 1099, 28 Pac. 943].)

The evidence tended to show that the contractor who raised the grade of the street above the ditch, acting not in accordance with the terms of the contract but under instructions of the city engineer, made the crown of the street higher than the ordinance or his agreement required, and the argument is made that any detriment caused by the act of the contractor may not be attributed to the city. The city accepted the completed street, however, and maintained it at the grade actually established. It, therefore, is immaterial, say respondents, whether the contractor followed the specifications of his contract accurately or not. (*Tyler* v. *Tehama Co.,* 109 Cal. 618, [42 Pac. 240].) But appellant suggests that this case is governed not by the rule in *Tyler* v. *Tehama Co.,* *supra,* but by that announced in *Sievers* v. *City and County of San Francisco,* 115 Cal. 648, [56 Am. St. Rep. 153, 47 Pac. 647], which holds that a city is not responsible for the remissness of its officers or contractors. In that case no act

of the city was shown to have been performed in authorization or ratification of the contractor's act. In this case it was not only stipulated that the city accepted the street as raised in grade and used it but, moreover, there was a conflict of testimony regarding the repair and consequent raising of Cedar Street at the place where the ditch crossed, some of the witnesses declaring that the altitude of the grade at that place was due to repairs made by the city's own workmen and not to the acts of the contractor.

Error is asserted by counsel for appellant because the court permitted testimony regarding alleged conversations between plaintiffs and certain officers of the city government regarding the intended action of the municipality in grading the street. Without reviewing this matter in detail it is sufficient to say that we find no material injury could have been suffered by defendant because of the admission of this testimony.

The judgment and order are affirmed.

Lorigan, J., and Wilbur, J., concurred.