**ALLSTATE INSURANCE CO., Plaintiff,**

v.

**Robert S. VAVASOUR, Susanna Vavasour and Regan Carroll, Defendants.**

**No. C–92–1118 FMS.**

United States District Court, N.D. California.

July 10, 1992.

Cynthia L. Mellema, Sonnenschein Nath & Rosenthal, San Francisco, Cal., for Allstate Ins. Co.

Robert J. Lange, Glynn Cella & Lange, Walnut Creek, Cal., for Robert Vavasour and Susanna Vavasour.

John C. Ferry, Kornblum & Ferry, San Francisco, Cal., for Regan Carroll.

William D. McDowall, Nagle Vale McDowall Cotter & Dunn, San Mateo, Cal., for State Farm Mut. Auto. Ins.

## ORDER DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION

FERN M. SMITH, District Judge.

Plaintiff Allstate Insurance Company ("Allstate") brings this declaratory relief action seeking a judgment that it is not liable to defend or to cover claims arising from pending litigation in the Superior Court for the County of Alameda against its insureds, defendants Robert S. Vavasour and Susanna Vavasour.

On these motions, Allstate seeks summary judgment on its causes of action against the Vavasours and against the Vavasours' opponent in the state court action, Regan Carroll, as well as on the Vavasours' counterclaims against Allstate. For the reasons stated herein, Allstate's motions are DENIED.

## FACTUAL BACKGROUND

At issue is the scope of the Vavasours' Allstate–issued homeowners' insurance policies (Nos. 099731283 & 099731284), which were in effect from May 4, 1989 to May 28, 1990.

In 1989, the Vavasours purchased their home at 2528–30 Benvenue Avenue in Berkeley. The lot belonging to Regan Carroll, 2532 Benvenue Avenue, is adjacent to theirs. Until the litigation between the Vavasours and Carroll arose, no fences or other markers demarcated the property line between the two parties. In late 1989, the Vavasours learned that Carroll planned to move his house and construct a multi-unit building on his lot. The Vavasours filed a lawsuit in Alameda County Superior Court alleging violations of various ordinances and obtained a preliminary injunction against Carroll. On April 21, 1990,

following issuance of the injunction, Carroll erected fenceposts along what he asserted to be the boundary of his lot. The Vavasours had until that date used the unpaved area on which he erected the posts on a daily basis for access by car to their garage, which is located at the rear of their lot. The fenceposts sliced eight inches in width from the Vavasours' driveway, rendering it unsafe for automobile ingress and egress.

In response, the Vavasours again sued Carroll, this time alleging a prescriptive easement, trespass, removal of lateral support, and private nuisance. Alameda County Superior Court No. 664506–5. On June 27, 1990, Carroll filed a cross-complaint against the Vavasours seeking to quiet title to the alleged prescriptive easement, and alleging causes of action for trespass, malicious prosecution and abuse of process. In support of his trespass claim, Carroll alleged:

On or about May, 1989, and continuing to the present time, [the Vavasours] ... without Cross–Complainant's consent, entered the above-described land of which Cross–Complainant is seised and possessed, pursuant to [the Vavasours'] continuous and habitual pattern of entering Cross–Complainant's land during [the Vavasours'] ingress to and egress from [their] property.... As a proximate result of [the Vavasours'] entry onto the Cross–Complainant's land, Cross–Complainant has been damaged in a sum to be proven at trial. Said damage includes, but is not limited to, damage to Cross–Complainant's real property, costs incurred by Cross–Complainant in erecting a fence to prevent [the Vavasours] from continuing their wrongful trespass, and

[costs of suit].

Cross–Complaint ¶¶ 13–14.

The Vavasours tendered defense of the trespass claim to Allstate (but not the abuse of process or malicious prosecution claims). By telephone September 11, 1991 and letter dated September 17, 1991, Allstate declined to defend the Vavasours against Carroll's cross-complaint and, on

March 18, 1992, filed this lawsuit for declaratory relief.

## DISCUSSION

The Allstate policies at issue provide: "Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an accident and covered by this part of the policy," elsewhere defining "property damage" as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction."

■■■ The duties to defend and to indemnify are not co-extensive. The duty to defend is in general broader than the duty to indemnify; where there is any possibility of coverage, the insurer is duty-bound to defend. *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 605, 222 Cal.Rptr. 276 (1986). Moreover, in making its evaluation of whether a defense is required, insurers must look beyond the causes of action actually pled to determine whether the underlying facts giving rise to the lawsuit might support a covered claim. *CNA Casualty*, 176 Cal.App.3d at 606, 222 Cal.Rptr. 276. *See also Allstate Insurance Co. v. Overton*, 160 Cal.App.3d 843, 851, 206 Cal.Rptr. 823 (1984).

■■■ Alternatively, an insurer must defend if ambiguous language in the policy leads the insured reasonably to expect that a defense will be provided. *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir.1991), *citing, Producer's Dairy Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986). A policy provision is ambiguous if it is capable of two or more constructions, both of which are reasonable. *Producers Dairy Co.*, 41 Cal.3d at 912, 226 Cal.Rptr. 558, 718 P.2d 920.

California's rules for construing insurance contracts are well settled. "The meaning of an insurance policy is to be ascertained according to the insured's reasonable expectation of coverage, and all doubts as to meaning are to be resolved against the insurer." *Holcomb v. Hart-*

*ford Casualty Ins. Co.*, 230 Cal.App.3d 1000, 1007–1008, 281 Cal.Rptr. 651 (1991). Coverage clauses are interpreted broadly in favor of coverage, while exclusions are interpreted narrowly. *McLaughlin v. Connecticut General Life Ins. Co.*, 565 F.Supp. 434, 440–41 (N.D.Cal.1983). If two or more interpretations are reasonable, the court must adopt the interpretation that favors coverage. *Id.*

### A. Allstate's Declaratory Relief Causes of Action

In support of its position that it has no duty to defend or to indemnify the Vavasours, Allstate asserts that (1) no "accident" within the meaning of the policy's language is at issue in the underlying action; and (2) no "property damage" is alleged in the underlying action.

#### 1. "Accident"

Allstate cites in support of its position three cases in which courts have construed the precise Allstate policy language at issue. In each of these cases, the court has held that, because the conduct alleged in the underlying action was intentional, the subject matter of the action did not constitute an "accident" triggering a duty to defend or indemnify. *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1365 (9th Cir.1991) (claims by former cohabitant for constructive trust, breach of implied contract and intentional infliction of emotional distress arising from termination of twelve-year relationship not "accidental"); *Allstate Ins. Co. v. LaPore*, 762 F.Supp. 268 (N.D.Cal.1991) (Ware, J.) (claims of defamation arising from insured's allegations of sexual relations with plaintiff not "accidental"); *Allstate Ins. Co. v. Salahutdin*, No. C–91–4492 EFL (May 15, 1992) (claims of trespass arising from insured's act of removing surveyor's string at boundary of property not "accidental").

In *Chamberlain*, the Ninth Circuit explained that an insured cannot intend all the acts that resulted in the victim's injury, but assert that the injury itself is an "accident" because the insured did not intend to harm the victim, citing *Merced Mutual Ins.*

*Co. v. Mendez*, 213 Cal.App.3d 41, 50, 261 Cal.Rptr. 273 (1989) (denial of coverage upheld for injuries sustained in the insured's physical attack on and forced copulation of the victim). 931 F.2d at 1365. In *LaPore*, the court explained that "[c]ases construing the accidental act restriction focus not on the intent of the insured to cause harm, but rather upon the *nature* of the harmful act itself." 762 F.Supp. at 270.

The Vavasours' case presents a close question. Though Judge Lynch's slip opinion in *Salahutdin* closely resembles this case, it is not on point. There, the act alleged to be a trespass in the cross-complaint in the underlying action was the insured's removal of the surveyor's string after posts demarcating the boundary between the parties' properties had been erected. The Court, applying the *Chamberlain* analysis, focused on the insured's intentional removal of a string that she knew was being used to align a fence on land whose ownership was in dispute, even though she did not believe the act was wrongful because she believed it to be on her land.

■ Here, Carroll's trespass claim rests on the Vavasours' routine use of their driveway over a period of years. There is no allegation that during the course of such use, the Vavasours had any inkling that their driveway did not lie entirely on their own property. In other words, the only act the Vavasours intended may have been to drive in and out of their own driveway, not to drive on their neighbor's property. There is, moreover, no evidence that the Vavasours voluntarily took any action after the erection of the fence posts—which notified them of Carroll's claim of possession of a portion of their driveway—

to trespass on the disputed portion of the property.

Under California law, an individual may be held liable for trespass only for conduct that is either negligent, reckless or intentional, or the product of ultrahazardous activity. *Armitage v. Decker*, 218 Cal. App.3d 887, 906, 267 Cal.Rptr. 399 (1990); *Dufour v. Henry J. Kaiser Co.*, 215 Cal. App.2d 26, 30, 29 Cal.Rptr. 871 (1963). Trespass is not merely an intentional tort. These principles mean that an absence of intent to trespass in driving in and out of their driveway may render the alleged trespass "accidental." For this reason, Allstate's argument that coverage is barred because the Vavasours' conduct can only be characterized as intentional is unavailing.

On the basis that the Vavasours' conduct in committing the alleged trespass may not have been inherently wrongful and, indeed, may have been devoid of intent or even knowledge, *Chamberlain*, *LaPore* and *Salahutdin* are distinguishable.

Allstate's position would appear to prohibit coverage where a homeowner committed any voluntary act, however innocent, if that act had the effect of harming another. In a hypothetical situation where a homeowner was unaware that his sewer line had a serious leak, such that his voluntary day-to-day use of his plumbing facilities resulted in pollution of his neighbor's property, Allstate might well argue that coverage was barred.

No California cases address the availability of coverage for trespass claims under policies covering "accidents;"[1] based on the foregoing analysis, however, the Court concludes that California law contemplates the possibility that an alleged trespass may be an "accident." The record in the under-

---

1. The Vavasours cite two California cases concerning coverage for trespass. One holds that an "intentional acts" exclusion does not bar coverage for trespasses, *Firco, Inc. v. Fireman's Fund Ins. Co.*, 173 Cal.App.2d 524, 343 P.2d 311 (1959); the other holds that Insurance Code section 533 (concerning "wilful acts of the insured") does not bar coverage for trespasses, *Meyer v. Pacific Employers Ins. Co.*, 233 Cal. App.2d 321, 43 Cal.Rptr. 542 (1965). These cases, though not controlling, are instructive.

Their reasoning is to some degree inconsistent with Allstate's reading of *Chamberlain et al.* In *Meyer*, for example, the Court stated: "The fact that an act which causes an injury is intentional does not take the consequence of that act outside the coverage of a policy which excludes damage unless caused by accident for if the consequence that is the damage or injury is not intentional and is unexpected it is accidental in character." 233 Cal.App.2d at 327.

lying action gave rise to the possibility that the action might present a covered claim; moreover, the Vavasours' understanding of the term "accident" in this context was reasonable. Allstate has a duty to defend the claim at issue.

### 2. "Property Damage"

The merits of Allstate's argument that the underlying action does not allege "property damage" appear more clear-cut. As previously stated, Carroll's cross-complaint specifically alleges that the Vavasours' alleged trespass damaged his property.

As support for its assertion that no "property damage" has been alleged, Allstate cites Carroll's declaration filed in opposition to the Vavasour's motion for a preliminary injunction against his staking of their driveway in the state court action:

> [F]rom the photos, it can be observed that the crabgrass separating the Vavasours' driveway and the surveyor's string is not matted down and shows no indication that users of the driveway ever drive across the crabgrass. Although I obviously cannot swear that the users of the driveway have ever driven on my property, these pictures clearly indicate that it would be extremely unlikely that that has been done recently, if at all, and that there is clearly no necessity to do so.

■ This admission may prove to be a key piece of evidence in the Vavasours' defense against Carroll's allegations of trespass. Yet Allstate takes the position that it may comb the record in the underlying action for admissions (and, presumably, other evidence as well) sufficient to disprove the insured's liability and use such evidence as grounds for refusing to defend or to cover in the underlying action. Having determined that it will not be required to cover the claim, it then asserts that it has no duty to defend.

Though it is correct that a determination that it has no duty to cover releases an insurer from any duty to defend, Allstate's approach to the coverage question places the cart before the horse: it would allow the insurer to refuse to defend a cause of action that, as pled, could give rise to a covered claim where the evidentiary support for that cause of action is flawed. This approach leaves the insured to incur legal bills defending itself in the underlying action. California's broad duty to defend cannot properly be so circumscribed as to contemplate this result. *Cf. Garcia v. Calfarm Ins. Co.*, 6 Cal.App. 4th 885, 891–93, 7 Cal.Rptr.2d 504 (1992) ("impressive" evidence that claimant's decedent was insured's employee not relevant to duty to defend under policy containing employee exclusions once claimants amended complaint to allege that decedent was an independent contractor).

### C. *The Vavasour's Counterclaim for Bad Faith*

■ Tort damages are available against an insurer for refusing to defend a claim, even though refusing to defend constitutes a breach of contract, when the defendant breaches the implied covenant of good faith and fair dealing and is guilty of oppression, fraud or malice. *Tibbs v. Great American Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir.1985).

On the insurer's motion for summary judgment, the insured's bad faith claim stands or falls with the merits of Allstate's duty to defend. Clearly, the standard for bad faith imposes a heavy burden on the insured, and often requires additional facts outside the insurer's communications with the insured regarding the claim. In *Tibbs*, for example, the insured was able to place evidence before the court that the insurer's in-house counsel was unresponsive to admonitions by his employees that the claim in question was probably entitled to a defense. 755 F.2d at 1375.

Because this Court finds that Allstate has a duty to defend the trespass claim, Allstate's motion for summary judgment on the Vavasours' counterclaim for bad faith must be denied. The Vavasours are entitled to appropriate discovery on that counterclaim.

### CONCLUSION

The Vavasours were entitled under the Allstate policy to a defense at the time they

tendered Carroll's claim, because the Carroll trespass claim, as pled, suggests the possibility that a covered claim might be at issue in the lawsuit. The Court takes no position on whether Allstate will ultimately be required to cover the claim. Summary judgment is DENIED.

The parties shall appear for a status conference on September 18, 1992 at 8:30 a.m.

SO ORDERED.